By the Court.—Speir, J.
The law was settled before the enactment of the statute—Session Laws of 1841, chap. 242 (4 Edm. Rev. Stat. 479)—that the owner or master of the vessel could insist that upon having the goods released and delivered under the attachment, the freight should be paid for the carriage, and a fuá indemnity against the consequences of any bill of lading signed by him. The statute directs what that indemnity shall be. It requires, before the attachment shall issue, the attaching creditor shall execute a bond with sufficient sureties to any or either of the owners or masters of the vessel on board of which *464 such goods shall be shipped, conditioned to pay such owner or master all expenses, damages and charges, which may be incurred by such owner or master, or to which they may be subjected for unlading said goods from said vessel, and for all unnecessary detention of said vessel for that purpose. Since the act went into operation no attachment can issue until the bond has been given. This is the only change made in the law. It prohibits the issuing of the attachment until the indemnity specified shall have been executed and . delivered to the master.
It appears the sheriff’s attention was called to the omission to give such bond, and he justified his action on the ground that he himself was indemnified.
The defendant’s counsel claims that the plaintiff ought not to recover the value of the goods, for the reason that the plaintiff had not been called upon to pay anything in consequence of the bills of lading in- the hands of other parties.
It must be regarded as too firmly established, as well upon principle as by authority, to be now questioned, that prior to the passage of the act, a master who had signed a bill of lading, could not, with prudence, deliver back the goods without having all the parts of the bill of lading delivered up to him. If any part has -been transmitted to third parties, they may have acquired an interest in the goods (See Abbott on Shipping, 739, marg. 595, and cases cited; 3 Kent’s Com. 228, note C). The statute did not in the least change the law as it stood before the enactment. It merely made provision that sufficient indemnity should be made to the master or owner before the attachment should be executed. In the absence of this bond of indemnity, the sheriff had no right to take the goods from the possession of the plaintiff. Having taken them in violation of law, the plaintiff is entitled to full redress, which is the full value of the goods, until the *465 bills of lading are surrendered or the bond of indemnity is given to him under the statute. On the trial, the plaintiff claimed to be indemnified by the verdict of the jury, unless a satisfactory bond was given to him. for any liability on the bills of lading. This was refused by the defendant. To the exceptions taken by the appellant to the items allowed there seems to be no conflict of evidence, as claimed by him, except in one instance.
I think the charge of sixteen dollars paid Captain Marshall for watching should be disallowed. Captain Marshall appears, by the evidence, to have been out of employment at _the time, and this sum was paid to him for looking over. the vessel while they were taking the flour out, and at the same time Captain Hankinson, the master, and the crew, were there ; it being a part of the duty of the captain to look after the ship when seized. This charge must be deducted from the amount recovered.
The value of the twenty-nine barrels of flour was fixed at the lowest rates proven.
The judgment should be affirmed, without costs on this appeal, upon the plaintiffs deducting the sum of sixteen dollars from the amount of the judgment.
Sedgwick, J., concurred.